On Rehearing.
Breaux, J.
We take up, in the first place, the case of the first named plaintiff, Willey, a lumber dealer, who claims to have furnished materials used in the construction of the St. Charles Hotel to the amount of two thousand, four hundred and sixty-three and 96-100 dollars. This creditor claims a privilege upon the funds attached, and asks that his be recognized as a lien superior to those of the other attaching creditors. This plaintiff sold lumber to Peter Y. Erazer, of Minneapolis, Minn., which Erazer manufactured at his factory and Xilaning-mill into doors, casings and articles for interior finishing of the St. Charles Hotel building, in New Orleans.
Nearly all the white oak was from Hollybridge, Miss., where it was bought by Willey and shipped to Minneapolis, where it was sold and delivered to Erazer. A small part of the oak lumber was bought by Willey, in Indiana. Willey, also, bought from Otis & Co., of New Orleans, four thousand, five hundred feet of mahogany, which he had consigned to his lumber yard in Chicago, and from his lumber yard, *1596 wlierjo he had it in stock, he sold this 4,500 feet of mahogany to Frazer, in Minneapolis. The vendors to Willey, in Louisiana, Mississippi and Indiana, had no dealing with the St. Charles Hotel Company, and Willey, himself, had no dealing either with the contractor or sub-contractor of that company. He did not even know that the St. Charles Hotel was being constructed. He (not in Louisiana, but in another State,) sold the materials to Frazer, to whom, in another State, he delivered the lumber, and to whom he looked for payment until the latter failed. Manifestly, the locus contmclus was not in the State of Louisiana. The timber was cut down and sawed into lumber outside of this State, and sold as before stated; all except the few thousand feet of mahogany which was sawed in this city, shipped from here and delivered to Willey, plaintiff, in Chicago, as before stated. No claim is made on Willey by his vendor, Otis & Co., for the price of this mahogany; Otis & Co. have, doubtless, been paid by Willey for it. All this material, the oak and the mahogany, became his, Willey’s, out of the State of Louisiana, and away from the State he delivered it to Frazer. He sold it, and completed the sale some time before it was ever shipped, manufactured by'Frazer, as before stated, to Louisiana. As between Willey, the vendor, and Frazer, the vendee, the contract is not a Louisiana contract, and it must be taken and construed according to the laws of Minnesota, where, we take it, the privilege of the furnisher of supplies is unknown. There can be no question of the locality of the contract. It was a Minnesota transaction. This being a completed transaction, under the laws of another State, it could not be reopened, and the plaintiff could not acquire a privilege by the fact of the manufactured articles being brought here.
The decisions of this court have, in the remote past, denied a privilege claimed after a contract has been completed under other laws. We deem it proper to adhere to the precedents, the correctness of which does not seem to have been questioned since.
We take up for decision the next ground upon which this claim is based, which is, that this plaintiff is entitled to rely on the protection which Statute 180 of 1894 affords, that he has furnished materials and the owner has neglected to exact a bond as required. The testimony adduced for the purpose of identifying the lumber and showing that he was a furnisher of materials, was not very satisfactory. This *1597 X>laintiff unquestionably sold to Erazer, his debtor, lumber to the amount claimed, and for which Erazer is indebted to him; but as to •whether or not it was all manufactured into doors and other items of wood-work used in the construction of the St. Charles Hotel, gives rise to a question difficult to solve.
We are informed by the creditor, as a witness, that it is possible to identify most of the lumber he sold, by the grain of the wood, and by some of the streaks and stripes, i. e., “dark infusion streaks in the wavy grain of the wood, running lengthwise of the grain in the locality in which this wood is grown.” The creditor and another witness who was in his employ, knew that some of the lumber had been manufactured, as before stated. They were not aware of the number of feet of the lumber which was thus manufactured and shipped to the St. Charles Hotel Company, nor did they know whether or not others had or had not sold the same kind of oak or mahogany to that company. Before testifying, they repaired to the building, and, on mere inspection, they discovered, as they thought, that quite a number of feet had been used in the building, which lumber they could recognize by the indicia before mentioned. The indentification of the material was far from complete, but as we do not propose to rest our decision upon this ground, we pass to the next.
Now, with reference to the statute 180 of 1891, plaintiff, Willey, did not contract with a view to the security which this statute affords, and, on the other hand, the security on the contractor’s bond, given to protect laborers and furnishers of supplies, could not have had in contemplation such a foreign contract as that into which plaintiff had entered with Frazer, at Minneapolis. Nonetheless, plaintiff having failed to recover the price of this lumber, because the purchaser failed in business, he proposes to follow the material he sold to Frazer, in its changed condition, and hold the St. Charles Hotel Company responsible for failure, as he avers, to take bond to cover his claim. The St. Charles Hotel Company is a third person as to him. There is no possible vinculum juris between the plaintiff and this hotel. He was not known when contracts and sub-contracts were entered into to build the hotel. He has a right of action against Frazer, but it is -not contemplated in furnishing this bond that it should serve as surety for all those who chose to supply manufacturers with materials in other States.
*1598 In Winston vs. Stoddard, 8 M. 135, England was the place of sale, where the law provides no privilege for-vendors. The Louisiana law grants that privilege, and if the privilege is not entirely a matter of remedy, then the contract itself is not entitled to a privilege. The privilege was considered as belonging to the contract itself, and not to the remedy for enforcing its execution. “When men enter into agreements,” said the court, “they generally do so with reference to the laws of the place where they contract^ and ought not to calculate as having their rights and claims enlarged and administered by the law of any other.”
The Legislator has inserted the statute cited in every contract in the State, as an additional right; not being a matter of remedy, we could not assert that additional right, which is in the nature of a privilege, into foreign contracts.
The mahogany of Otis & Co., used in the construction of the St. Charles Hotel, was identified with some certainty as being the same imported from Yucatan, and sawed at their saw-mill in this city, and which was afterwards sold to P. V. Frazer, in Minneapolis. The agent of Frazer, a Mr. Rotcha, while he was in New Orleans, inspected this lumber, but did not buy it while he was here. -It was out of this State that Frazer and James Hay, one of the sub-contractors, entered into a contract to furnish mill-work and interior finish for the hotel. To fill out this contract, Frazer wrote on order to Otis & Oo., to ship to him, in Minneapolis, the mahogany in question. It was shipped and delivered to him at the latter place; and after it had been worked up into interior finish, it was consigned to the St. Charles Hotel Company, in the name of Frazer, exclusively. Otis & Co. were not known in the transaction.
Be all this as it may, after the contract between Otis & Co. and Frazer had been entirely executed, and only the matter' of payment remained between them, Frazer, the debtor, was called on by Otis & Co. for payment. In answer, Frazer sent them notes for the amount, payable at the Irish-American Bank, of Minneapolis, thus confirming the locus of the transaction in Minnesota. Story on the Conflict of Laws, p. 278.
Moreover, we do not think that the bond was intended to cover such contract. If it did, then it would follow that the pig iron shipped from Pennsylvania to another State, and worked into shape to be used in the *1599 construction of a building, avouIcI burden the building with a privilege, and the contractor’s bond with an additional obligee, if the building in which it would be used were in Louisiana. If there were a privilege, or security under the contractor’s bond, then the vendor of materials, for instance, as in this case, the vendor of the mahogany logs in Yucatan, would have a right to be heard, and would control, to the extent of his interest in the distribution of funds due for the construction. The vendor of the nails used in the building, sold in a distant State, or oven the furnisher of the iron ore out of Avhich the nails were manufactured, would then have a privilege and some claim under a contractor’s bond intended to secure the laborer who works on the building and the furnisher of materials to the contractor and sub-contractor. The privilege and the contractor’s bond were not intended to secure the price of the material bought and delivered abroad and held for sale in a distant market, which may or may not find its way in a building in Louisiana.
It must be borne in mind, that, as to the remedy, the vendor who is a creditor, has full protection, but it is different where an additional right is granted by the law, and that can not be considered a part of the contract when it is made. The contract, as to rights, can not be construed so as to expand and take in more rights than it had when the property was bought and delivered in a different State. The rule is one laid down in a number of decisions, to Avhich we think we should adhere.
The one who contracts with a sub-contractor, who is himself three removes from the principal contractor, has no privilege or other similar right given by, or rather, read into a home contract by State action.
The fact that the property sold in a rough state by this sub-contractor and worked into other shapes and interior finish by a manufacturer in lumber for a hotel building, and brought into this State, does not, in this State, give rise to additional right as forming part of the contract. We can think of no reason in law why a contract should be enlarged, and made to cover property sold and delivered in another State.
State action can only affect such property as is within her limits. When, in another jurisdiction, under another system of laws, rights are acquired, they remain as acquired, save as to remedy. We do not *1600 understand that contractor’s bonds and privileges for the security of workmen and material men, are a matter of remedy. If so considered, then our conclusion would be different.
The privilege and the contractor’s bonds afford absolute right. They are not rights which arise on property when brought into this State and become nil if it chances to be taken out of this State. This would be the effect were we to hold that rights such as before mentioned, arise after the property is brought within the limits of the State. Privileges and other similar rights are strictissvmi juris. They are limited in their effect to the jurisdiction in which they arise. We are not concerned at this time with the material man residing in another State who furnishes material that is used in constructing a building here, and which has not changed shape, and is susceptible of identification. This gives rise to other issues, and other grounds for discussion. We are dealing with a state of facts different from that just suggested, and for that reason, we have arrived at the conclusion that no privilege or right under a contractor’s bond arises in this case.
We have very little to add to that which has already been said in the original opinion regarding the right of the senior mortgage creditor (The Connecticut Insurance Company). We can only rerpeat that we do not think that this creditor can recover at the expense of other creditors,' as he certainly will, if he can, as he proposes, avoid all attempt to recover on his mortgage and share in the other assets of the insolvent. The other creditors would have no recourse on the property mortgaged. An opportunity will never offer itself for subrogation to the rights of the creditors, so that their loss would be complete. We think that the features of this case render it exceptional.
The question of interest was argued at bar, and it was contended that interest was due from the date the concursus was constituted. From that date, the amount acknowledged as due should have been deposited, and not having been deposited, interest at five per cent, per annum is due thereon. In several cases this court has decided that interest was due as herein allowed, notably recently in the Molasses Company case, 52 Ann..... In our decree, interest will be allowed.
It is therefore ordered, adjudged and decreed that the order heretofore entered setting aside our original decree be recalled to the extent herein decreed, and that the judgment originally pronounced is reinstated to the extent that it ordered that the St. Charles Hotel Com *1601 pany is entitled to credit upon paying as therein ordered; and also in so far as it orders a stated amount to be deposited in the judicial deposit fund of the trial court subject to the order of court; also in so far as it orders that proceedings be suspended, for the present, against the fund deposited, for the purpose of enabling one of the creditors— the Connecticut Mutual Life Insurance Company — to foreclose on mortgage it holds and properly credit the proceeds of the sale, and in so far as it orders the cause to be remanded for further proceedings by the attaching creditors, the Connecticut Mutual Life Insurance Company, O. L. Willey, Otis Manufacturing Company, Boyd N. Thompson and W. W. Johnson & Company. The former decree is not reinstated in so far as it gives preference to C. L. Willey and the Otis Manufacturing Company, as furnishers of materials, leaving them thereby to their recourse on their attachment and to whatever rights they may have thereunder contradictorily with their debtor and contractor and with the other attaching creditors. It. is also ordered that the former decree of this court be amended so as to charge the St. Charles Hotel Company with five per cent, per annum interest on six thousand, five hundred and forty-four and 20-100 dollars from February 10th, 1896.